May it please the court, my name is David Abney, here representing the appellants, David Khalaj and Juliet Yamara. They are here in the audience. I may ask them to stand briefly and be recognized. Thank you for the opportunity to have an oral argument. It's a difficult situation, an unexpected event from the viewpoint of my clients. The events unfolded rapidly and before they knew it, they were involved in an altercation that was over quickly, removed from the main scene of what happened and taken to another area where further problems developed. They were eventually, police officers from the City of Phoenix arrived and arrested them. The charge was aggravated assault and the district court correctly decided that it wasn't aggravated assault under the Arizona statute at issue if it's against peace officers and the Customs and Border Patrol officials were not peace officers under Arizona law. They had not gone through direct certification or any sort of cross certification. So isn't the standard for probable cause where the reasonable officer could have believed that a crime had been committed and so the counter argument would be that it would be reasonable for the officers in those circumstances to believe that the Customs and Border Protection agents were peace officers. That would be one reasonable inference. Another reasonable inference would be that because they are themselves certified peace officers that they would know in general who was certified and who was not certified and that they could have and should have verified. But is that the standard? I mean, we're considering whether there was probable cause, not whether the offense actually occurred. Well, they would have to have probable cause to believe that there was an assault against peace officers in order to charge aggravated assault. That's the point. You said that's a reasonable inference that they would believe that the Customs and Border Protection agents were peace officers. And a reasonable inference is they could disbelieve that as well. Right. That means there's probable cause because if there's more than one way to view the evidence, that doesn't mean the I disagreed because we're dealing with a summary judgment situation. You have to evaluate the facts from the viewpoint of the non-moving party. If you take every reasonable inference in favor of the non-moving party. What facts are in dispute? I mean, there's a video, two videos. Pardon me, Your Honor? What facts are in dispute? Well, in dispute is who started it, whether there was self-defense. In Arizona, you do have the right to defend even against those who are on arrest if unlawful force is being used against you. But that's again, not an issue when determining if an officer had probable cause to make an arrest. Those are defenses. I understand there's the self-defense defense and also a First Amendment assertion. But that's not for the officer to decide at the scene. Well, what the officers to decide what the officers deciding is having to deal with at the scene is a question of fact. And it's a question of fact as to who started this altercation. It cannot be a lawful arrest, cannot be a proper arrest. If you assault a citizen, the citizen resists with reasonable force. That's a question of fact. If the citizen is doing that, if that's happening, that is not a lawful arrest at all. So that is a battery upon a citizen. The district court. I don't I don't believe I agree with your characterization of the district court's ruling. I don't think the district court concluded that there was no probable cause. I think the district court didn't reach that because the court concluded that there was a probable cause for an alternative charge, which was disturbing the peace. That is correct. The aggravated assault one goes by the way. And I think the district court did a good job on that, saying it can't be aggravated assault. They're not peace officers. And of course, then there can't be probable cause to arrest because they're peace officers. You can't have an aggravated probable cause. You can't have an aggravated assault probable cause under those conditions. Right. But so the point is, there's another another basis for which they've been arrested. Disorderly conduct. And that's a very interesting, specific statute in Arizona. You do talk about you have to have you have to have an intent to to disturb the peace. There's never been any sort of evidence that would have been available to police officers of an intent to disturb the peace. Well, there's the videos. The videos, I think, are very problematic for you because under Scott v. Harris, we're not just bound by one party's characterization of the events. When there's videotape, the court's entitled to watch it and reach conclusions based on what's shown on the videotape, which shown on the videotape is a very loud and disturbing event. So it would be difficult to watch that video and conclude that people in the airport were disturbed. There was not a disturbance of the peace. I disagree, Your Honor. I think you could look at the video and say it looks to me from the video. Hypothetically, not me. It would look to a reasonable person looking at the video that the police, the Customs and Border Patrol people instigated the physical conduct. I don't think there's been any disagreement on that, that they touched David Halash first, that they pushed David Halash first and he retreated and pushed and then everything just fell on the floor. His wife comes in to defend him. But isn't that a defense? Isn't that a self-defense argument? Well, that would negate any sort of offense, I believe. If you were simply defending yourself, you can't be charged with anything, disorderly conduct, simple assault, aggravated assault. But again, the question here is just probable cause to make the arrest. We've said the existence of some legal defense, including self-defense, does not negate probable cause. Those issues get worked out later and officers are allowed to make the arrest. And here the CBP officers were not the ones making the arrest. It was local police. It was local police after having an opportunity to investigate. This isn't just a spur of the moment. You get in a fracas, you arrest the person and off they go. They came in later, they looked at the video, they talked with people, they had an opportunity to figure out whether this really was aggravated assault. They blew that. And hypothetically, they had the opportunity to decide whether it's disorderly conduct. Well, why do you think there was not a disturbance of the peace? It seems that the peace was in fact disturbed when you watched the video. Is your argument that your clients didn't have knowledge or intent? Correct. They did. There was no evidence available to police officers that they intended to cause some sort of fracas. And as far as knowledge, it's tied in very specifically. Peace or quiet of a neighborhood is the first part of it. And this is not a neighborhood. It's simply an airport. But there was an Arizona Court of Appeals case where they concluded that the airport was a neighborhood. I did not read the case that way, Your Honor. It was State v. Brahe? Yeah. Brahe? Brahe v. Kotke? I'm thinking of State v. Brahe. And that's the case I was referring to as well. Oh, State v. Brahe. Yes. Okay. Just one second. I spent a great deal of time under applied peace dealing with a State v. Brahe. But frankly, even without that case, I mean, the officers are still, you can make a mistake of law. You're arguing now that an airport is not a neighborhood. That's right. It's not a neighborhood. Right. But that's a legal argument. It's not clear to me that the officers are charged with knowing that at the time. They're allowed to make a reasonable mistake of law. They're allowed to make reasonable mistakes, but not about a neighborhood. I mean, a neighborhood is down at Armory Park. A neighborhood is where people live and work and play together. Beyond that, there is also other ways in which the peace can be disturbed, including disturbing the peace of a specific person. Right. And so you look at the videotape and you see, I don't know if it's 100 people, but it's a lot of people in the immediate area stopping, turning around, staring. Clearly, they heard and saw the events. So wouldn't it be a reasonable inference just from watching that video that the peace of those people was disturbed? Well, if I could, no. And the reason is, if it's not a neighborhood, then you have to have some sort of proof, some sort of evidence that you have actually disturbed someone's peace. And what I'm suggesting is that that's enough from the videotape. There's a lot of someone's shown on the videotape stopping and staring. It's a subjective standard. The police would need to talk to a few of those people and say, was your peace disturbed? And they may have said no, or they may have said, well, my peace was disturbed by the fact that these officers attacked these old folks. Okay. I'm almost offended by your reference to your clients as old folks because I believe I'm older than they are. So I don't consider myself elderly or an old folk. So I understand your point in your argument that you're trying to project your clients as very frail and vulnerable and attacked by these officers. Maybe that's a little over the top. I hope not. I'm 70. To me, they seem like old folks too. But anyway. And Brahe, I'd like pages 11 and 12 of my reply brief because I wanted to save a few seconds. It was not a disorderly conduct statute. It was a disturbing to peace statute. And it was actually aimed at people. And you've got to have under the In Re Julio standard, you've got to have proof of subjective effect on people. Unless it's a neighborhood, then you can have an objective standard. I understand that you have to have that to prove your offense at trial. But I don't understand why you have to have that just to show there's a fair probability that people's peace was disturbed. Can you explain that? If I understand, if I understand the question, it's up to the police officers to do a reasonable investigation under all the facts and circumstances to determine if there would be an offense of disturbing the peace, pardon me, of disorderly conduct. And part of that would be determining was this a neighborhood? No, obviously not. And subjectively, were there people whose peace and quiet was actually disturbed? Go out and talk to a few witnesses and find out was your peace and quiet disturbed? That's what the Supreme Court requires. So if there's a loud ruckus in front of people who, as Judge Beatty said, were staring at it, you don't think there's a fair probability that their peace was disturbed? Is that your Yes, they may have simply been intrigued. I may have been upset by what the officers were doing. They may have been upset by what my clients were doing. But the only way to find out is for the police officers to go out and actually do a full investigation instead of just well. And of course, we're dealing with a hypothetical charge of disorderly conduct because there never was an arrest or charge for that. But even hypothetically speaking, they need to complete a reasonable investigation before they arrest. They had the time to do it. After all, the police officer in charge took time to look at the videos. He talked to some of the witnesses, but he didn't talk to any of the people whose peace and quiet was hypothetically disturbed. So you're over now. Would you I'll give you a couple minutes for rebuttal. Thank you. I appreciate it. Good morning, may it please the court. My name is Lori Burke, and I'm here on behalf of the police. I find it interesting that in plaintiffs, or I'm sorry, an appellant's reply brief, they did not address the Hill case, which we submitted as supplemental authority that this court just issued in June of this year. And the court made very clear that unless all reasonable officers would agree that there was no probable cause for the arrest, there's qualified immunity. Here, there was probable cause that even if the court was defined, there wasn't, the officers would be entitled to qualified immunity. And there's that. And how many claims does that affect? That's the section 1983 claim, the federal claims, but how about the state claim? And there's a state false arrest claim as well. And the state false arrest case law follows the federal. So if you find qualified immunity under the state statute, it should apply under, I'm sorry, for federal purposes, it should apply to state as well. But there was probable cause. This is a neighborhood, you're correct that the Brady case expressly fined or upheld a conviction where a woman was charged with disturbing the peace and quiet of the people at the airport based on the airport being a neighborhood. And going back to the Hill case, the Ninth Circuit was very clear that we're wary of second guessing the split second judgments made by law enforcement officers in investigating crimes. And it talks about, you know, we can't second guess them from the certainty and comfort of the judge's chambers, you know, in retrospect, in hindsight, and from the certainty and comfort of Judge Snow's chambers, he found there was PC to arrest. He found this was a neighborhood. Do we have to determine that? Could there still be probable cause for disorderly conduct or disturbing the peace? Yes. Absent. Yes. Fine. It's a neighborhood. Yes. It doesn't have to be a neighborhood. Just as your questions were alluding to earlier, if any individual's piece was disturbed, it would still constitute just there's no evidence of intent or knowledge. How do you respond to that? So knowledge is defined under under 13105, ARS 131059, I'm sorry, 10, which addresses culpable mental And what? And that's in Title 13, which is defining knowledge for purposes of commission of crimes, including disorderly conduct. And it defines knowingly as that a person's aware or believes that the person's conduct is of that nature or that the circumstance exists. They understood they were being loud. They there's no way they could not have been aware of that, that they were being very loud. And the statute is clear that it does not require any knowledge of the unlawfulness of the act. So it just they just need to be aware of the fact that they are yelling and that they're yelling loudly and engaging in behavior that does, in fact, constitute disorderly conduct. So there's a dispute, I believe, in the record as to whether Officer Green reviewed a copy of the video that included sound. So if he did not, if we view that in the light most faithful to the to the plaintiffs and conclude that he was reviewing a video that had no audio recording, does that matter? I mean, he wouldn't be able to determine that this was loud. It does not matter, Your Honor, because the collective knowledge doctrine applies. And so any knowledge that special agent Colter Bidwell had, that is part of the collective knowledge of all of the law enforcement on scene. So all of the knowledge that he had is the information that's reported in the reports he prepared from his interviews of that day. And he relayed, according to both Sergeant Green and Colter Bidwell, Colter Bidwell relayed information about what's the facts that supported being charged with ag assault to Sergeant Green. Both of them, as you know, in their depositions couldn't really recall much because it was four years earlier. But we know what Colter Bidwell knew on this date because he put it in his report. He viewed the video. Sergeant Green viewed the video. So even if he didn't hear the audio of it, Colter Bidwell did. And the collective knowledge doctrine applies even if they're not in the same law enforcement agency. There's a good decision cited in our materials, United States District of Arizona decision by Judge Campbell, but he cites to the Villasenor case and another Ninth Circuit case that discusses the importance of the collective knowledge doctrine. And as long as Colter Bidwell had information, it's undisputed that Colter Bidwell told Sergeant Green there is sufficient evidence to support charges of aggravated assault here. That is Sergeant Green of that. And so if you look at the reports, that the reports provide probable cause for the arrest for ag assault. And Mr. Abney is incorrect that Judge Snow decided that there was no aggravated assault. What he's referring to is Judge Snow's decision on the Rule 12 motion to dismiss. And Judge Snow was very clear. It's document 80, page 13. He says, quote, at this stage, the court takes as true that the CBP employees were not peace officers and they did not have probable cause to arrest under the ag assault statute. He was just saying before I look at any evidence based on the four corners of the complaint, I'm letting it go past the motion to dismiss stage. There is no law to suggest that CBP officers are not law enforcement officers and it would be reasonable for the Phoenix police officers to conclude that they are. If you look at the statute that appellants rely on is in title one of the Arizona revised statutes. And that's a general definition of peace officers. And the prefatory language is clear that these definitions only apply if it's within that context. You go to title 13, there's a completely different definition of peace officer. And that is any person vested by law with a duty to maintain public order and make arrests and includes a constable. The CBP officers have the authority to make arrests and part of their job is to maintain order in the airport. And so it would be reasonable for city police officers to believe that they are peace officers who can be the victim of ag assault. But even if they were not, there's still probable cause to arrest for simple assault and plain and appellants didn't address that in their briefing in their opening brief and they've waived the argument that there wasn't probable cause to arrest for simple assault. So we have probable cause to arrest for a variety of crimes here. And so I believe there is. So there is clearly probable cause to arrest. And even if there wasn't, it couldn't be more clear that when you have a federal district court judge who has eight the benefit of eight months to research the case law, analyze the video, watch it over and over research case law, and comes to the conclusion that there was probable cause to arrest for disorderly conduct. How can we then conclude it was unreasonable for police officers that day to conclude they had probable cause to arrest? It can't be unreasonable, I think as a matter of law. And if you look to at the fact that the county attorney brought charges, then they indicted or they went before the grand jury, the judge permitted the charges to go forward. Nobody questioned whether the CBP officers were peace officers until the appellants, criminal attorneys raised that in the criminal case. And then, you know, ultimately, a decision was made to dismiss, but it was after a lot of briefing, a lot of analysis, and police officers don't have the benefit of being able to do that. And the case law is clear. We don't second guess our police officers, even if they make reasonable mistakes. And if there was a mistake here, which I don't think there was, that mistake was reasonable. I'm out of time. So unless anyone has further questions for me, I will take my seat. Okay, thank you very much. Thank you. If I may return to Brahe briefly, it was not a disorderly conduct problem. It was disturbing the peace. And it talks about disturbing the peace and quiet of a neighborhood, family or person by doing a list of things. And that's the only time neighborhood appears in the case, the statute. And what was it? Then it talks, the case talks about maliciously and willfully disturbing the peace and quiet of the people at the airport. It just happened to be at an airport. That's not a neighborhood. There's no way on earth anybody with any familiarity with the English language would say that an airport is a neighborhood. A neighborhood is houses, people, businesses, all in general geographical zones, similarly situated, et cetera. We had a great definition of that in the brief from Webster's Third New International Dictionary of the English Language Unabridged. It's a wonderful definition. It really sets what we all know what neighborhood is. We're not dealing with split-second decision. We're dealing with the result of an investigation. And the result of the investigation was wrong because it wasn't a neighborhood. And reasonable people could have decided that what actually happened was that the customs officials started and committed themselves committed disorderly conduct. And that Umar and Palaj were simply defending themselves. That would be a reasonable interpretation of what the situation was. And that's really, there's really questions of fact here about, well, what really happened? Now, you can look at it from one perspective and look at it from another perspective, but it really should come down to the jury deciding, well, what are all these facts and circumstances boil down to? Was there really disorderly conduct? Did they know or should they have known that what they were doing was disturbing somebody's peace? When what they're doing is reacting to a very unfortunate and from their viewpoint, unexpected situation. If there's no further questions, I wish to thank the court for your time. Thank you. Thank you for your arguments. Counsel, thank you both for your arguments this morning. They were very helpful. This case is submitted.
judges: IKUTA, BADE, BRESS